**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.:  1:11-cv-20074-JLK

FERNANDO GABRIEL GOLDIN,
and others similarly situated,

       Plaintiffs,

Vs.

BOCE GROUP, L.C., a Florida
limited liability company d/b/a
Nexxt Café, and SEDAT ONUR,

       Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS

     Defendants, Boce Group, L.C. d/b/a Nexxt Café ("Nexxt Café") and Sedat Onur,

("Onur") (collectively, Next Café and Onur are referred to herein as the "Defendants"),

pursuant to Fed. R. Civ. P. 12(b)(6), request that the Court enter an Order dismissing

the Complaint filed by Plaintiff, Fernando Gabriel Goldin.

## BACKGROUND

**I.**    **THE LEGAL BACKGROUND REGARDING THE "TIP-CREDIT."**

     Under Federal and Florida law, an employer can allow applicable employees' tips

to satisfy a part of the employee's minimum wage, reducing the direct wage the

employer must pay to these "tipped employees."  The affected employees must,

nevertheless, earn the Federal and Florida minimum wage, respectively.  Servers are

"tipped employees."  *Ervin v. OS Restaurant Serv., Inc.* – F.3d –, 2011 WL 135708 at *2

(7th Cir., January 18, 2011) ("A tipped employee, like a waiter . . ., is paid a tip-credit

wage, which is less than the minimum wage; the expectation is that her earnings for

each pay period, including both the base wage and tips, will equal or exceed the minimum wage.").  Nexxt Café avails itself of the tip-credit; thus, it pays servers a reduced direct minimum wage in consideration of the tips they earn.

## II.    **PLAINTIFF'S ALLEGATIONS.**

Plaintiff worked as a server at Nexxt Café.  In Count I, which attempts to set forth a minimum wage violation, Plaintiff makes a variety of arguments.  First, Plaintiff alleges that he was not paid the "required [reduced direct] cash wage . . . *for every hour worked*," (Compl., ¶ 12 (emphasis in original)), and thus Nexxt Café cannot avail itself of the tip credit for *any* of the hours Plaintiff worked.  *Id.* ("The Employer is therefore obligated to pay Plaintiff the full minimum wage for each hour worked . . .").

Second, Plaintiff announces his intention to use this lawsuit to investigate whether there may be a basis to assert two other possible violations:

> In this case, Plaintiff intends to conduct discovery to determine whether the Employer took control of Plaintiff's tips by causing Plaintiff to share with employees who are not entitled to share tips.  When the Employer took control of the tips belonging to Plaintiff, it lost the ability to claim a "tip credit."
>
> Lastly, the Employer failed to "inform" Plaintiff of their intention to claim a "tip credit," as required by the FLSA, 29 U.S.C. § 203(m).  Plaintiff also intends to conduct discovery to determine whether the employer complied with this condition precedent.

Compl., ¶¶ 13 – 14.

In Count II, Plaintiff alleges an overtime violation.  He claims that, essentially throughout his tenure, he consistently worked 51 hours a week from roughly September 2006 through roughly March 2010, but he was consistently unpaid for hours beyond a standard 40-hour workweek.  Compl., ¶¶ 20 – 21.  As to Counts I – II, Plaintiff alleges he "complied with all conditions precedent to filing this action."  *Id.*, ¶¶ 17, 23.

### III.   THE "EVERY HOUR WORKED" THEORY IS REJECTED BY FEDERAL COURTS.

The key to Plaintiff's Complaint is his previously-rejected "every hour worked" theory, which can transform a claim for a single hour of unpaid overtime into a massive minimum-wage claim for a tipped employee.  Plaintiff's theory is that a server's hourly pay rate isn't determined by the contract between server and restaurant, but instead is determined by the "actual hourly pay rate," ascertained by dividing the total amount of direct wages paid to the server by the total number of hours the server worked; if the resulting quotient is not at least equal to the statutorily mandated reduced direct wage, then the server was not paid the minimum wage for *any* of the hours he or she worked. Put differently, Plaintiff claims that if the employee was not paid the required minimum wage for "every hour worked," the employee was not paid the minimum wage for *any* hour worked.

An example illustrates Plaintiff's theory, and the absurd results it produces in the context of tipped employees.  Assume a server worked 40 hours a week for 50 weeks, from late July 2009 through late July 2010, and was properly paid the direct hourly wage of $4.23 an hour for each of those 2,000 hours (for a total of $8,460.00).[1]  Further assume the employee worked a *single extra hour* at the end of his last day in July 2010, for which he was not paid.  Normally, the server would have a claim for that single hour of unpaid wages.  But under Plaintiff's theory, the server's "real hourly pay" has to be

---

[1] This hypothetical example uses the Florida direct hourly wage of $4.23 for tipped employees:

> Employers of "tipped employees" who meet eligibility requirements for the tip credit under the FLSA, may count tips actually received as wages under the FLSA.  However, the employer must pay "tipped employees" a direct wage.  The direct wage is calculated as equal to the minimum wage ($7.25) minus the 2003 tip credit ($3.02), or a direct hourly wage of $4.23 as of July 24, 2009.

State of Florida Agency for Workforce Innovation, Florida's Minimum Wage (Updated October 2010), http://www.floridajobs.org/minimumwage/index.htm (last visited 02.14.11; copy attached as Ex. A).

recalculated and ascertained by dividing the total amount of direct wages paid by the total number of hours worked (8,460 divided by 2,001, rather than 8,460 divided by 2,000).  Under Plaintiff's theory, this server's hourly pay rate is no longer $4.23 for any of the hours he worked, but rather was $4.22 (actually, $4.227886) for every one of the hours he worked.  Because the server's "real hourly pay" fell a penny short of the required direct wage, the employer is liable to raise the server up to minimum wage for 2,001 hours.

And because the reduced direct minimum wage allows employers to take a $3.02 tip-credit, this single hour of unpaid overtime becomes – under Plaintiff's theory – the basis for a $6,043.02 minimum-wage claim (3.02 times 2,001) *before a claim for liquidated damages is even made*.  If Plaintiff seeks an award of liquidated damages, and plaintiffs in these cases always seek liquidated damages, a wage claim of less than $10.00 becomes a minimum-wage claim of over worth more than $12,000.00 (6.04 times 2,001).  The impact is even more pernicious if, as here, the period for which Plaintiff seeks recovery is greater than a year (indeed, under Plaintiff's theory, this $10.00 claim for a single hour of unpaid overtime can form the basis for Plaintiff's $89,502.42 minimum-wage claim).[2]  Plaintiff's "every hour worked" theory has been squarely-addressed in this Judicial District, and – not surprisingly – rejected.

---

[2] To be clear, Plaintiff is not alleging only a single hour of unpaid overtime as the basis for his minimum-wage claim.  The hypothetical set forth above is designed to make clear the underpinnings of Plaintiff's theory, thereby allowing the Court to evaluate whether the theory is viable under federal and Florida law.

# ARGUMENT

## I.      STANDARDS ON MOTION TO DISMISS.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In two recent rulings – *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, --- US ---, 129 S. Ct. 1937 (2009) – the Supreme Court adopted a new pleading standard for Rule 8.  *American Dental Ass'n v. CIGNA Corp.*, 2010 WL 1930128 (11th Cir., May 14, 2010).  Detailed factual allegations are unnecessary, but the Court has made clear that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S. Ct. at 1949.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of the prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than legal conclusions.

*Iqbal*, 129 S.Ct. at 1949 – 50.  Conclusory allegations do not need to be accepted:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

*Id.* at 1950; *CIGNA Corp.*, 2010 WL 1930128 (the principal that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions).

In sum, a complaint may be dismissed under Rule 12(b)(6) for failing to articulate a cognizable legal theory or for not alleging sufficient facts under a cognizable legal theory.  *Harding v. Time Warner, Inc.*, 2010 WL 457690, *4 (S.D. Cal., Jan. 26, 2010).

## II.   <u>COUNT I SHOULD BE DISMISSED</u>.

### A.   <u>The "Every Hour Worked" Theory Has Been Rejected in this District</u>.

On two prior occasions, Plaintiff's counsel has advanced the "every hour worked" theory to Courts in this Judicial District who have rendered an opinion on the theory.  In both cases, the Court rejected Plaintiff's theory, finding that "section 203(m) [the statute authorizing a tip-credit exception to the minimum wage rate] does not contemplate, and provides no remedy for, unpaid wages arising from alleged off-the-clock work." *Muldowney v. MAC Acquisition, LLC*, 2010 WL 520912 at *1 (S.D. Fla., Feb. 9, 2010) (Huck, J.).

In *Perez v. Palermo Seafood, Inc.*, 2008 WL 7505704 (S.D. Fla. 2008), the Court entered a judgment for plaintiff, finding that plaintiff "was paid the minimum wage during her regularly scheduled shifts, that the plaintiff was not paid overtime and that the plaintiff was not paid for work performed prior to her shift and after her shift." *Perez* at *1.  Most relevant here, the Court allowed the tip credit for hours where plaintiff was compensated, but disallowed the tip credit for off-the-clock work (finding that plaintiff was entitled to the full minimum wage plus the overtime premium for those hours). *Id.* Plaintiff sought to amend the judgment so that the findings of unpaid overtime formed the basis for a finding that plaintiff was not paid the minimum wage for any of the hours she worked (*i.e.*, the "every hour worked" theory herein). *Id.*

Magistrate Judge O'Sullivan rejected Plaintiff's interpretation of Section 203(m), citing the lack of precedent to support it and finding that the "cases that have disallowed

the tip credit, have done so because the employer failed to comply with one, or both, of

[the employee notice and tip retention] requirements." *Perez* at *2 – 3.  Indeed,

Plaintiff's theory was rejected twice in *Perez*, first at trial, then on the motion to amend

judgment.  *Id.* at *3.

   Plaintiff's counsel then advanced the theory in *Muldowney*.  It was again rejected.

First, Hon. Huck explained Plaintiff's "every hour worked" theory:

> Plaintiff alleges that Defendants did not pay her for work that
> she performed off-the-clock.  Plaintiff argues that in order for an
> employer to qualify for the tip credit, it must pay the reduced
> cash wage specified by section 203(m) for each and every hour
> worked.  Thus, according to Plaintiff, because Defendants did
> not pay her for hours that she allegedly worked off-the-clock,
> Defendants cannot claim any tip credit, not even for hours for
> which she was paid the specified reduced cash wage.

*Id.* at *1.  The Court squarely rejected Plaintiff's purely theoretical argument, and

refused to interpret a new requirement into Section 203(m):

> The Court agrees with Defendants and with Magistrate Judge
> O'Sullivan's opinion in *Palermo Seafood, Inc.*  Section 203(m)
> merely prescribes the method for calculating a tipped employee's
> wages and sets forth two explicit requirements that must be met
> for an employer to claim the tip credit [the employee notice and
> tip retention requirements], both of which are satisfied in this
> case.  The statute says nothing about unpaid wages due to off-
> the-clock hours.  Further, by rejecting Plaintiff's interpretation,
> she is not left without a remedy; she can seek unpaid wages for
> her alleged off-the-clock hours under state law or other sections
> of the FLSA.  Therefore, the Court finds that Defendants are
> entitled to the tip credit for hours where Plaintiff was paid the
> specified reduced cash wage.

*Muldowney* at *1.  *Perez* and *Muldowney* are legally on-point and correct.  The same

result that was reached in those two recent rulings is appropriate here.

   In response, Plaintiff may argue that he has not made clear the underpinnings of

his legal theory, and that the issue is not ripe for consideration at the motion to dismiss

stage.  Defendant hopes Plaintiff would not be coy about his theory, since (a) we know it

to be the linchpin of his argument, (b) it is a purely legal issue that can be addressed at

this stage, and (c) it has a tremendous impact on the scope and dynamics of the case.

For those reasons, it should be addressed at this stage.  Moreover, Plaintiff alleges that

he has complied with the conditions precedent to bringing a federal and Florida claim.

One such requirement is service of a pre-suit notice prior to initiating claims under the

Florida Minimum Wage Act ("FMWA").[3]  Plaintiff's notice letter in compliance of the

FMWA's requirement explains his legal theory:

> The employer cannot enjoy the benefit of the tip credit if the
> employer pays a wage less than the reduced wage specified
> by the tip credit.  Although, payment records indicate that
> Plaintiff was paid a reduced wage in accordance with the tip
> credit.  The payment records do not reflect all hours Plaintiff
> worked (51 hours per week).  When factoring all hours,
> Plaintiff alleges to have worked for the benefit of the
> employer, Plaintiff was paid a wage of $2.31 per hour.
> Consequently, Plaintiff was not paid the reduced wage in
> accordance with the tip credit and the tip credit is invalidated.

Ex. B.

Plaintiff's pre-suit demand letter can be considered at this stage of the

proceeding:

> The second amended complaint sufficiently references the
> FCHR's cause determination, though it is not physically
> attached to the complaint.  *See Day*, 400 F.3d at 1276
> (stating "a document need not be physically attached to a
> pleading to be incorporated by reference into it").  Legendary
> asserts that the FCHR's cause determination should be
> stricken because the complaint references it only for
> jurisdictional purposes and not within the complaint's

---

[3]

> However, prior to bringing any claim for unpaid minimum wages pursuant to this
> section, the person aggrieved shall notify the employer alleged to have violated
> this section, in writing, of an intent to initiate such an action.  The notice must
> identify the minimum wage to which the person aggrieved claims entitlement, the
> actual or estimated work dates and hours for which payment is sought, and the
> total amount of alleged unpaid wages through the date of the notice.

Fla. Stat. § 448.110(6)(a).

statement of facts. The fact that the document is referenced only under the heading "Conditions Precedent," which includes paragraphs 1 though 4, rather than under the heading "Statement of Facts," which includes paragraphs 16 through 35 of the complaint, is a distinction without a difference. Each substantive count expressly and fully incorporates all of paragraphs 1 though 35, including paragraph 3's reference to the FCHR's cause determination. To draw a distinction based upon the headings given to those paragraphs would be to "'elevate form over substance,'" which is inappropriate in reviewing pleadings. *See Williams v. Blue Cross and Blue Shield of Fla., Inc.*, No. 3:09cv225, 2009 WL 3710760, at *1 (N.D. Fla. 2009) (quoting *Intel Broth. of Elec. Workers, Local Union No. 323 v. Coral Elec. Corp.*, 576 F.Supp. 1128, 1134 (S.D. Fla. 1983); *see also* Fed. R. Civ. P. 8(e) (requiring courts to construe pleadings "so as to do justice").

V*alentine v. Legendary Maine FWB, Inc.*, 2010 WL 1687738, *2 (N.D. Fla., April 26, 2010) (also finding that the fact the FCHR's Cause Determination was attached to the Motion to Dismiss, rather than the Complaint, was not a reason to strike it or not consider it); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (document attached to a motion to dismiss may be considered – without the motion being converted into one for summary judgment – if the attached document is central to plaintiff's claim and undisputed).[4]

## B.   <u>Plaintiff Cannot Bring Speculative Claims Merely to Get To Discovery</u>.

The other two claims Plaintiff brings in Count I are purely speculative. In both instances, Plaintiff mentions each of the two requirements that must be met for an employer to claim the tip credit – the notice and tip retention requirements – and then alleges that he "intends to conduct discovery to determine" whether Defendants met these requirements. Compl., ¶¶ 13 – 14. Plaintiff cannot put the cart before the horse.

---

[4] If necessary, Defendant hereby requests that, pursuant to Fed. R. Civ. P. 12(d) and on this discrete issue, the Court consider the instant Motion to Dismiss as a Partial Motion for Summary Judgment. *See Progress Dev. Corp. v. Mitchell*, 286 F.2d 222, 232 (7th Cir. 1961); *Matthews v. U.S. Treasury Dep't*, 60 F.R.D. 212, 217 (C.D. Cal. 1973); *Connors v. Fair*, 1989 WL 73295 at *1 (D. Mass, June 8, 1989).

"Plaintiffs cannot raise a claim based on pure speculation, hoping later to find some basis for the claim in discovery." *Johnson v. Village of Bellwood*, 2010 WL 2653335 at *2 (N.D. Ill., July 1, 2010).  Indeed, except in very limited circumstances (none of which apply here), "discovery is authorized solely for parties to develop the facts in a lawsuit in which plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim").  *Podany v. Robertson Stephens, Inc.*, 350 F.Supp. 2d 375, 378 (S.D.N.Y. 2004).

> Discovery is unwarranted where it would function as a "fishing expedition for evidence in search of a theory that has yet to be asserted."  *In re Alper Holdings, Inc.*, 398 B.R. 736, 754 (S.D.N.Y. 2008).  Indeed, allowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to "streamline [ ] litigation by dispensing with needless discovery and factfinding" where the plaintiff has failed to state a claim under the law.  *Neitzke v. Williams*, 490 U.S. 319, 326 – 27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

*Bridgewater v. Taylor*, 2010 WL 3959606, at *3 (S.D.N.Y., September 27, 2010).

Plaintiff may argue that he does – or meant to – state a non-speculative claim.  This would be wrong, based on the express allegations of the Complaint.  But even if it were correct, Plaintiff's claims are far too threadbare to justify moving forward on them.  *Holmes v. Air Line Pilots Assn., Int'l*, 2010 WL 4025594, at *20 (E.D.N.Y. October 12, 2010) ("as plaintiffs have not supported their conclusory allegations with facts sufficient to render the allegations of Delta's willful misconduct plausible, they are not entitled to engage in discovery in order to determine whether they can allege a plausible claim").  This is especially true where, as here, Plaintiff goes out of his way to note that he needs discovery to even determine whether a violation exists.  *In re Neale*, 440 B.R. 510, 519 (W.D. Wis. 2010) ("The concept of notice pleading does not authorize a fishing expedition; the defendant is entitled to 'fair notice' of what the claim is and the grounds

upon which it rests").  Under the foregoing cases – and the line of authority stemming

from the *Twombly* and *Iqbal* cases (*see* Arg. Sect. I, above) – the two speculative

claims set forth in paragraphs 13 – 14 of Count I should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court enter

an Order dismissing Count I, and for any other relief the Court deems appropriate.[5]

Respectfully submitted,

**DE LA O, MARKO,
MAGOLNICK & LEYTON**
Attorneys for Defendant
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:   (305) 285-5555

By: /s/ Daniel L. Leyton
    **Miguel M. de la O**
    Florida Bar No. 0822700
    delao@dmmllaw.com
    **Daniel L. Leyton**
    Florida Bar No. 0061824
    leyton@dmmllaw.com

---

[5] Count II states a claim, but one that is grossly wrong on the facts.  Under Fed. R. Civ. P. 12(a)(4), the time period to answer this claim is tracked to the resolution of a partial motion to dismiss:

> Fed. R. Civ. P. 12(a)(4) ("Rule 12(a)(4)") provides that the service of a motion pursuant to Rule 12 suspends the movant's time to file a responsive pleading until 10 days following the disposition of the motion. Interpreting that rule, courts have held that filing a partial motion to dismiss will suspend the time to answer those claims or counterclaims that are not subject to the motion.  *See Finnegan v. Univ. of Rochester Med. Ctr.*, 180 F.R.D. 247, 249 – 50 (W.D.N.Y. 1998) (collecting cases). If the opposite rule controlled and partial motions to dismiss did not suspend a party's obligation to reply to additional claims, the result would be "a procedural thicket" of piecemeal answers that would poorly serve judicial economy.  *See Ricciuti v. New York City Transit Auth.*, 90 Civ. 2823(CSH), 1991 WL 221110, at *2 (S.D.N.Y. Oct. 3, 1991).

*Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 366 (E.D.N.Y. 2009).  It appears that, since the *Gortat* ruling, Rule 12(a)(4) has been amended so that the time to file a responsive pleading is now 14 days after the disposition of the partial motion to dismiss (of course, the Court can set a different time if it wishes).

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on February 14, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document was served this day on all counsel of record and pro se parties identified on the Service List below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized matter for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

      Edilberto Marban, Esq.
      Marban@bellsouth.net.


                    <u>/s/ Daniel L. Leyton</u>
                    Daniel L. Leyton

## Quick Links

- About Us
- Agency E-Government
- Agency Media Center
- Agency Programs
- Emergency Website
- Events and Public Notices
- Hot Jobs
- Job Fairs
- Labor Market Statistics
- Open Government
- Press Releases

Home / Florida's Minimum Wage

# FLORIDA'S MINIMUM WAGE

### (Updated October 2010)

On January 1, 2011, the minimum wage in Florida will remain unchanged at the federal rate of $7.25 per hour.  The current federal minimum wage went into effect July 24, 2009.  Federal law requires that employers pay the higher of the federal or state minimum wage.  The federal minimum wage will prevail over the state rate until such time as the Florida minimum wage becomes higher than the federal rate.

Florida law requires the Agency for Workforce Innovation to calculate an adjusted minimum wage rate each year and to publish the minimum wage in Florida on October 15.  The annual calculation is based on the percentage change in the federal Consumer Price Index for urban wage earners and clerical workers in the South Region for the 12-month period prior to September 1, 2010.  With the higher federal minimum wage taking precedence over the state rate, that calculation will not affect the 2011 minimum wage in Florida.

On November 2, 2004, Florida voters approved a constitutional amendment which created Florida's minimum wage.  The minimum wage applies to all employees in the state who are covered by the federal minimum wage.

Employers must pay their employees the hourly state minimum wage for all hours worked in Florida.  The definitions of "employer", "employee", and "wage" for state purposes are the same as those established under the federal Fair Labor Standards Act (FLSA).  Employers of "tipped employees" who meet eligibility requirements for the tip credit under the FLSA, may count tips actually received as wages under the FLSA.  However, the employer must pay "tipped employees" a direct wage.  The direct wage is calculated as equal to the minimum wage ($7.25) minus the 2003 tip credit ($3.02), or a direct hourly wage of $4.23 as of July 24, 2009.

Employees who are not paid the minimum wage may bring a civil action against the employer or any person violating Florida's minimum wage law.  The state attorney general may also bring an enforcement action to enforce the minimum wage.  FLSA information and compliance assistance can be found at:
 http://www.dol.gov/dol/compliance/comp-flsa.htm.

Florida Statutes require employers who must pay their employees the Florida minimum wage to post a minimum wage notice in a conspicuous and accessible place in each establishment where these employees work.  This poster requirement is in addition to the federal requirement to post a notice of the federal minimum wage.  Florida's minimum wage poster is available for downloading in English and Spanish from the Agency for Workforce Innovation's website at:
http://www.floridajobs.org/workforce/posters.html.

The federal poster can be downloaded from the U.S. Department of Labor's website at:
http://www.dol.gov/whd/regs/compliance/posters/flsa.htm .

## FLORIDA'S MINIMUM WAGE RESOURCES

- 2011 Notice to Employees Poster (English)



EXHIBIT

A

© 2011 State of Florida, Agency
for Workforce Innovation |
Contact Us | Site Map | Privacy
Statement

- [2011 Notice to Employees Poster (Spanish)](#)
- [2010 Notice to Employees Poster (English)](#)
- [2010 Notice to Employees Poster (Spanish)](#)

An equal opportunity
employer/program.  Auxiliary aids
and services are available upon
request to individuals with
disabilities.  All voice telephone
numbers on this website may be
reached by persons using TTY/TDD equipment via the Florida Relay Service at 711.

Programa/Empresa que ofrece igualdad de oportunidades. Los asistentes y servicios auxiliares están disponibles a pedido de personas con
incapacidades. Aquellas personas que usen equipos TTY/TTD a través del Servicio de Retransmisión de Florida llamando al 711 pueden acceder a
todos los números telefónicos de voz en este sitio Web.

*.floridajobs.org: UA-4182001-1

*LAW OFFICES OF*

## EDDY O. MARBAN

*OCEAN BANK BUILDING, SUITE 350*
*782 N.W. LeJEUNE ROAD*
*MIAMI, FLORIDA 33126*

TELEPHONE: (305) 448-9292       *FACSIMILE: (305) 448-2788*       *marban@bellsouth.net*

December 15, 2010

*Via facsimile (305) 285-5555*
Daniel L. Leyton, Esq.
De la O, Marko, Magolnick & Leyton
3001 S.W. 3rd Avenue
Miami, Florida 33129

RE:    *Fernando Goldin vs. Boce Group, L.C., d/b/a Nexxt Cafe*

Dear Mr. Leyton:

    As you are aware, my office represents Fernando Goldin, who was formerly employed at your restaurant as a server. My office will pursue Mr. Goldin's overtime and minimum wage claim pursuant to Florida Statute § 448.110, as well as the Fair Labor Standards Act (FLSA). To perfect the claim pursuant to Florida law, the statute requires that we make this written request for unpaid minimum wages. Upon review of additional documentation, Plaintiff submits this notice with a corrected statement of claim.

    Mr. Goldin began working on September 2006 through mid-June 2010, as a server. Plaintiff was paid approximately $2.31 per hour. He worked approximately 51 hours and then was reduced the last three months to 27 hours per week.[1] Mr. Goldin was a "tipped employee." In the case of tipped employees, the employer may avail itself of the benefits of the "tip credit" which is allowed by law. Mr. Goldin intends to establish that your company is not entitled to the "tip credit" allowed by law. When the "tip credit" is unavailing, the employer is responsible for paying the full minimum wage.

    The tip credit is unavailing to the employer for several reasons. The employer cannot enjoy the benefit of the tip credit if the employer pays a wage less than the reduced wage specified by the tip credit. Although, payment records indicate that Plaintiff was paid a reduced

---

    [1]The hours worked are estimated as a matter of inference as allowed by law. see *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S.Ct. 1187, 1192-93 (1946); *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 115-6 (11th Cir. 2007). Accordingly, we reserve the right to amend any calculations set forth in this letter until such time as discovery is taken.


EXHIBIT
B

*Mr. Leyton*
*Page 2*
*December 15, 2010*

wage in accordance with the tip credit. The payment records do not reflect all hours Plaintiff worked (51 hours per week). When factoring all hours, Plaintiff alleges to have worked for the benefit of the employer, Plaintiff was paid a wage of $2.31 per hour. Consequently, Plaintiff was not paid the reduced wage in accordance with the tip credit and the tip credit is invalidated.

Tips received never belong to the employer. see *Barcelona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979) (*Tips are "by law the property of the waiters who receive them."*); *Richard v. Marriott Corporation*, 549 F.2d 303, 305 (4th Cir. 1976); DOL, Opinion Letter, 2001, WL 1558958 (April 2001) (*tips never become the property of the employer*). A contrary holding would be in contravention of the FLSA. *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1322-3 (1st Cir. 1992); *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 402-4 (3rd DCA 1994).

We claim that a minimum wage violation occurred because the restaurant is not entitled to claim a "tip credit." Accordingly, Mr. Goldin is entitled to be paid the full minimum wage. The statute requires that we estimate his damages. The law allows Mr. Goldin to make such estimates. F.S. 448.110(6)(a). Accordingly, his minimum wage damages are calculated as follows:

**September 2006 through December 2006, when Florida minimum wage was $6.40**
51 hours × $4.09 ($6.40 - $2.31) = $208.59 x 15 weeks = $3,128.85.

**January 2007 through December 2007, when Florida minimum wage was $6.67**
51 hours × $4.36 ($6.67 - $2.31) = $222.36 x 52 weeks = $11,562.72.

**January 2008 through December 2008, when Florida minimum wage was $6.79**
51 hours × $4.48 ($6.79 - $2.31) = $228.48 x 52 weeks = $11,880.96.

**January 2009 through July 23, 2009, when Florida minimum wage was $7.21**
51 hours × $4.90 ($7.21 - $2.31) = $249.90 x 29 weeks = $7,247.10.

**July 24, 2009 through March 2010, when Florida minimum wage was $7.25**
51 hours × $4.94 ($7.25 - $2.31) = $251.94 x 37 weeks = $9,321.78.

**April 2010 through June, 2010, when Florida minimum wage was $7.25**
27 hours × $4.94 ($7.25 - $2.31) = $133.38 x 10 weeks = $1,333.80.

Total minimum wages owed: $44,751.21, plus any other damages allowed by law.

Additionally, we claim Plaintiff worked overtime hours which he was not compensated at the proper overtime wage. We estimate his overtime wages as follows:

**September 2006 through December 2006, when Florida minimum wage was $6.40**
11 overtime hours × $3.20 (half-time the minimum wage) = $35.20 x 15 weeks = $528.00.

*Mr. Leyton*
*Page 3*
*December 15, 2010*

**January 2007 through December 2007, when Florida minimum wage was $6.67**
11 overtime hours × $3.335 (half-time the minimum wage) = $36.685 x 52 weeks = $1,907.62.

**January 2008 through December 2008, when Florida minimum wage was $6.79**
11 overtime hours × $3.395 (half-time the minimum wage) = $37.345 x 52 weeks = $1,941.94.

**January 2009 through July 23, 2009, when Florida minimum wage was $7.21**
11 overtime hours × $3.605 (half-time the minimum wage) = $39.655 x 29 weeks = $1,149.99.

**July 24, 2009 through March 2010, when Florida minimum wage was $7.25**
11 overtime hours × $3.625 (half-time the minimum wage) = $39.875 x 37 weeks = $1,475.37.

Total overtime wages owed: $7,002.92, plus any other damages allowed by law.

In addition, at the present time we request $1,000.00 in attorney's fees and costs.

If you wish to amicably resolve his claim, please contact our office within 15 days after receipt of this letter.

We will await your response.

Sincerely,

EDDY O. MARBAN, ESQ.

EOM/ea